# UNITED STATES NATIONAL BANK OF OREGON, PERSONAL REPRESENTATIVE OF THE ESTATE OF FRED COLLINS, DECEASED, *Appellant,*

*v.*

## DAVIES et al, *Respondents.*

548 P2d 966

*Elden M. Rosenthal,* Portland, argued the cause for appellant. With him on the brief was Charles Paulson, P. C., Portland.

*John R. Faust, Jr.,* of Hardy, Buttler, McEwen, Weiss & Newman, Portland, argued the cause and filed a brief for respondents.

Before O'Connell, Chief Justice, and Denecke, Holman, Tongue, Howell, and Bryson, Justices.

HOLMAN, J.

## HOLMAN, J.

This is an action for legal malpractice. Plaintiff appeals from an order dismissing its complaint after the trial court sustained a demurrer thereto which was based upon the statute of limitations.

The facts are assumed to be those alleged in plaintiff's complaint. In 1967 defendants advised plaintiff's decedent in connection with the sale of his stock in a corporation dealing in memorial vaults and markers. Defendants advised plaintiff's decedent to accept trust funds of the corporation in payment for his stock. Such payment was in violation of law and of the decedent's statutory fiduciary duties. On August 17, 1971, the corporation sued decedent, alleging in its complaint that such use of the funds violated the law. In May 1973 the lawsuit against decedent was settled by the payment of $170,000 by decedent to the corporation. The present action against defendants for malpractice to recover this sum plus $20,000 attorney's fees incurred in the defense of the action was filed November 5, 1974.

The first issue is the applicable statute of limitations. Plaintiff contends ORS 12.080(4) is applicable. It provides:

"An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof, shall be commenced within six years."

Plaintiff argues that defendants' advice caused a loss of decedent's money and therefore caused an injury to decedent's personal property. It is our opinion that the statute contemplates some direct, physical injury to personal property and that it is therefore not applicable. The applicable statute is ORS 12.110(1), which provides:

"An action * * * for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; * * *."

[ 665 ]

This statute has been held applicable to professional malpractice cases which are based upon the lack of due care, despite the existence of an implied contractual relationship. We have construed such actions to be ones of tort rather than of contract. *Lindemeier v. Walker,* 272 Or 682, 538 P2d 1266 (1975) (real estate agency malpractice); *Bales for Food v. Poole,* 246 Or 253, 256, 424 P2d 892 (1967) (engineering malpractice); *Dowell v. Mossberg,* 226 Or 173, 179, 188, 355 P2d 624, 359 P2d 541 (1961) (medical malpractice); *Wilder v. Haworth,* 187 Or 688, 690, 213 P2d 797 (1950) (medical malpractice); *Currey v. Butcher,* 37 Or 380, 61 P 631 (1900) *(semble)* (legal malpractice). In *Bales* we said that

"* * * the failure to exercise care and not the breach of the contract is the 'substance of the action.'* * *." 246 Or at 256.

The second and more important issue is the question of when the cause of action accrued. The statute of limitations commences to run at the time the cause of action accrues. ORS 12.010. Plaintiff urges that the statute should not commence to run until the malpractice is discovered (or should be discovered) and the damage is incurred. Defendants agree that the "discovery" rule applied to medical malpractice by *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966), and *Frohs v. Greene,* 253 Or 1, 452 P2d 564 (1969), should also apply to legal malpractice. Defendants contend, however, that the requirement that there be damages should not be used to extend the "discovery" rule.

M. Franks (England) LIMITATION OF ACTIONS 11 (1959), has the following to say about when a cause of action accrues:

"This is commonly the most difficult matter and is of crucial importance since in almost all cases the limitation period will commence to run from this moment. Before answering the question however it is necessary to consider what is meant by a cause of action. In the best-known definition it consists of every fact which it would be necessary for the plaintiff to prove, if traversed, in

order to support his right to judgment. When these facts have occurred and provided that there are in existence a competent plaintiff and a competent defendant, a cause of action is said to accrue to the plaintiff because he can then prosecute an action effectively. * * *." (Footnotes omitted.)

As previously indicated, we have held an action for malpractice to be a tort action based upon negligence. Franks, *supra* at 194-95, has the following to say about when an action for negligence accrues:

"Since negligence has become established as an independent tort it is clearly settled that to constitute it there must be a duty owed to the plaintiff, a breach of it and resulting damage. It is submitted therefore that the plaintiff's cause of action accrues upon the occurrence of the damage. It has been said however that accrual takes place at the time of the negligence because it is then that the damage is caused, but it is submitted that this is not in accordance with principle, and when applied to cases of the Donoghue v. Stevenson [[1932] A.C. 562] variety— where a substantial interval may occur between the negligent act and the resulting damage—is not even accurate as a proposition of fact. * * *." (Footnotes omitted.)

In *Developments—Statutes of Limitations,* 63 Harv L Rev 1177, 1200-201 (1950), the following is found:

"The statutory period may begin either when the defendant commits his wrong or when substantial harm matures. This choice, unnecessary where the two events are simultaneous, becomes complex where considerable time intervenes; here the courts have generally looked to the substantive elements of the cause of action on which the suit is based. If the defendant's conduct in itself invades the plaintiff's rights, so that suit could be maintained regardless of damage—as with a breach of contract and most intentional torts—the statute commences upon completion of the conduct. But if harm is deemed the gist of the action, the occurrence of harm marks the beginning of the period.

"Since harm is an element essential to a negligence action, the statutory period should not commence before the incidence of the harm. * * *.

"In the case of negligent breach of contract, if the

action is considered to sound in tort, limitations should not begin to run until maturation of harm. * * *." (Footnotes omitted.)

In Prosser, The Law of Torts 143-44 (4th ed 1971), it is stated:

"* * * Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered."

It is our conclusion that in a negligence case the statute of limitations should never start to run until the occurrence of the harm.

This raises the question of when damage occurred. Defendants contend it occurred when decedent was sued or, in any event, as soon thereafter as decedent could hire competent counsel and could ascertain whether the claim against him was likely to be a valid one; and that, in either case, such a time was more than two years prior to the commencement of this case by plaintiff's decedent. There is no doubt that decedent's necessity to defend the action caused him damage more than two years prior to the commencement of the present action. It is not so clear, however, that at that time it could yet be determined that his expense of defense *was caused by* negligent advice by defendants. In many situations the closeness of the legal questions involved would make it impossible to ascertain until the ultimate determination of the case whether it was brought as the result of the attorney's bad advice or whether it was the result of a misapprehension on the part of the party who sued as to his legal rights. In the present instance, if decedent had

won the case brought against him, he would not normally be in a position to claim that negligent advice on the part of the present defendants was a cause of his expense of defense.

When this case is tried, it might be shown that the outcome of the claim made against decedent was so crystal clear that upon securing legal advice decedent immediately knew either that he had a valid claim against defendants or that he did not; or, it might appear that no one could tell for certain whether the claim was good or bad. There is nothing about the filing of the claim against decedent together with the passage of any arbitrary lengths of time which, *as a matter of law,* demonstrates that decedent should have been aware at a time which makes the claim vulnerable to the statute that his necessity to defend the action was caused by defendants' advice. *Cf. Brown v. Babcock,* 273 Or 351, 540 P2d 1402, 1405 (1975); *Budd v. Nixen,* 6 Cal 3d 195, 98 Cal Rptr 849, 491 P2d 433 (1971). The following statement from the previously cited Harvard Law Review article, at 1200, is appropriate:

"* * * Although prima facie it seems just to compute the time limitation on the plaintiff's remedy from the time when a suit could have been maintained, the considerations which determine the factual components to be pleaded and proved by the plaintiff do not themselves necessarily fix appropriate time limitations for the initiation of an action. It is not surprising, therefore, that the courts have not always literally carried out the directive that the period begin when the cause of action accrues.[1] The commencement of the statutory period has occasionally been delayed, despite the existence of a theoretical right to recovery, until the occurrence of some later event the absence of which made suit impossible or improbable: for example, until the plaintiff learned of the wrong or until substantial damage occurred. * * *."

[1] We have held that it was the intention of the legislature that a cause of action for medical malpractice not accrue under ORS 12.010 until the patient becomes aware or should have become aware of the malpractice. *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966). By similar reasoning we have come to the same conclusion in this case.

The author could just as logically have added, "or until it appeared probable that the substantial damage actually suffered *was caused* by defendant." *Kohler v. Woollen, Brown & Hawkins,* 15 Ill App 3d 455, 304 NE 2d 677, 680-81 (1973); *Price v. Holmes,* 198 Kan 100, 422 P2d 976, 980-81 (1967); *Marchand v. Miazza,* 151 So 2d 372, 375 (La App 1963).

Plaintiff's decedent could have played it safe by filing an action against defendants immediately upon his being sued, in the event it subsequently appeared defendants' negligent advice was the cause of the action brought against him. However, it does not seem wise to encourage the filing of such provisional actions. More important, it could prove to be disastrous to a plaintiff's defense of the action brought against him and, thus, perhaps disastrous to his former legal advisor as well. In the present case, plaintiff's decedent would have been defending one suit or action, claiming he had acted in conformance with the law, while simultaneously maintaining an action against defendants, claiming that he had not acted in conformance with the law because of faulty advice from defendants. Such an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view.

This is one of those situations in which common sense dictates that a "later event" (the appearance of decedent's probable liability) should take place before the statute commences to run. There is nothing upon the face of plaintiff's complaint which makes it appear as a matter of law that such an "event" had taken place more than two years prior to the commencement of the present action.

The judgment of the trial court is reversed and the case is remanded for further proceedings.