Argued and submitted July 3, 1985, affirmed January 29, reconsideration denied April 11, petition for review denied May 28, 1986 (301 Or 165)

# GODFREY,
*Appellant,*

*v.*

# BICK & MONTE, P.C. et al,
*Respondents.*

## (16-84-00181; CA A34607)

713 P2d 655

Daniel C. Re, Bend, argued the cause for appellant. With him on the briefs was Gray, Francher, Holmes & Hurley, Bend.

Brian D. Stine, Eugene, argued the cause for respondent Bick & Monte, P.C. With him on the brief were Darst B. Atherly and Atherly, Butler & Burgott, Eugene.

James M. Callahan, Portland, argued the cause for respondent Gregor, Hogan, McCracken & Early, P.C. With him on the brief was Bittner & Barker, P.C., Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

This is a professional malpractice action. Plaintiff appeals the granting of defendants' motions for summary judgment on the ground that the complaint was not filed within the applicable Statute of Limitations. The trial court was correct and we affirm.

In the underlying corporate stock transaction structured by defendant attorneys and certified public accountants, plaintiff claims that he incurred additional federal and state income tax liability as a result of defendants' negligence. A chronology of events, adopted from plaintiff's brief, follows:

| Date | Event |
| --- | --- |
| December 19, 1979 | An IRS examiner's report concluded that the corporation's repurchase of plaintiff's stock was essentially equivalent to a taxable dividend. |
| April 28, 1980 | A letter was written to plaintiff from the district director of the IRS advising plaintiff that the IRS believed an adjustment of tax liability was necessary.[1] |
| May 12, 1981 | Plaintiff and his attorney, Tom Hoyt, discussed the possibility of an action against defendants. Plaintiff and Hoyt also discussed the possibility of an attempted settlement with the IRS. |
| May 13,1981 | Hoyt wrote to plaintiff concerning the possibility of a malpractice action against the defendants. |
| September 28, 1981 | A letter was sent to plaintiff by |

---

[1] The letter enclosed the December 19, 1979, report indicating a balance due of $42,455.

the regional commissioner of the IRS.[2]

November 10, 1981     Notice of deficiency was mailed to the plaintiff.

December 30, 1982     Plaintiff and the IRS settled the tax liability dispute and plaintiff paid the amount settled upon.

January 4, 1984     Plaintiff filed this action in Lane County Circuit Court.

The Statute of Limitations in malpractice actions against attorneys and accountants is two years. ORS 12.110(1). A cause of action accrues and the statute begins to run when a potential plaintiff has been damaged and becomes aware, or should have become aware, that defendants' negligence was the cause of the damage. *Jaquith v. Ferris,* 297 Or 783, 786, 687 P2d 1083 (1984); *U. S. Nat'l Bank v. Davies,* 274 Or 663, 668-70, 548 P2d 966 (1976); *St. Paul Fire & Marine Ins. v. Speerstra,* 63 Or App 533, 666 P2d 255, *rev den* 295 Or 773 (1983). When damage occurs can be a question of fact or of law. *Brown v. Babcock,* 273 Or 351, 355, 540 P2d 1402 (1975).

In this case, the trial judge decided as a matter of law that the action was not timely filed. The evidence in support of the motion for summary judgment supports that determination. Plaintiff had been damaged more than two years before commencement of the action when he incurred attorney and accounting fees in his attempt to resolve his IRS problems. *See Jaquith v. Ferris, supra,* 297 Or at 788; *U.S. Nat'l Bank v. Davies, supra,* 274 Or at 668. He also knew that his damage was caused by defendants' negligence in the form of improper documentation and structure of the transaction. He stated in his deposition, in answer to questions regarding events that transpired in May, 1981, that he knew all along that "had it been handled correctly, there wouldn't have been any * * * liability." In addition, at that time he was advised by his new attorney of the possibility of a malpractice action against

---

[2] The IRS regional commissioner stated in the letter that he did not believe that any further conferences would be productive and stated that he was forwarding the case to Seattle for issuance of a statutory notice of deficiency.

these defendants. The new attorney made specific reference to the two-year Statute of Limitations and advised that "it is appropriate to deal with this issue now." Plaintiff did not know the whole extent of the damage, *i.e.*, the ultimate tax liability and extent of the attorney and accounting fees that he would be required to pay, but knowledge of the extent of damage is immaterial in determining when the statute commences running. *Jaquith v. Ferris, supra,* 297 Or at 788; *St. Paul Fire & Marine Ins. v. Speerstra, supra,* 63 Or App at 538.

This case is distinguishable from *Fliegel v. Davis,* 73 Or App 546, 549, 699 P2d 674, *rev den* 299 Or 583 (1985), where we stated, "It is unrealistic to require a client to recognize that the lawyer's advice is bad, even after being sued for acting on it, until there no longer exists a realistic possibility that a court will hold that the advice was good." In that case, before the litigation's conclusion, there was no evidence that the plaintiff "could have *known* that its attorneys' advice was negligent." 73 Or App at 549. (Emphasis in original.) To the contrary, in this case plaintiff admits that by May 13, 1981, he knew that the dispute could have been avoided had the transaction been structured differently and he had been independently advised of the possibility of a malpractice action against defendants. Thus, he knew of the harm without having to wait for resolution of the controversy.

In *St. Paul Fire & Marine Ins. v. Speerstra, supra,* we held that the Statute of Limitations was not tolled pending resolution of the plaintiffs' underlying appeal. There, the plaintiffs alleged negligence in the defendant attorneys' failure to convey a settlement offer to the party suing the plaintiffs for medical malpractice. We held that, once judgment had been entered against the plaintiffs in the medical malpractice action, they had been harmed, because they were required to pay the judgment or the cost of an appeal. (The plaintiffs knew that the settlement offer had not been conveyed before the jury returned its verdict.) 63 Or App at 538-39. Similarly, in this case plaintiff was harmed and knew of the harm before final resolution of the controversy, *i.e.,* settlement with the IRS. Plaintiff either had to pay the tax deficiency or incur costs in contesting it.

In *Fliegel v. Davis, supra,* the defendants continued to represent the plaintiff through the appeal of the litigation.

This factor weighed in favor of delaying commencement of the running of the Statute of Limitations until resolution of the underlying lawsuit.[3] Here, however, defendants were no longer representing plaintiff, who had sought and received independent legal advice more than two years before this action was commenced.

Finally, plaintiff is relying not on a judicial determination but on a compromise settlement as the starting point for the running of the Statute of Limitations. Unlike a judicial determination, that compromise provides no new insight as to whether defendants were negligent. Plaintiff knew that he was damaged and that defendants were the cause of his damage well before that time and more than two years before the commencement of this action. The case is time-barred.

Affirmed.

---

[3] See also *St. Paul Fire & Marine Ins. v. Speerstra, supra,* where the defendant attorneys continued to represent the plaintiffs in the appeal, but we found that the Statute of Limitations was not tolled nevertheless.