Yvonne WILLIS, Petitioner,

v.

Chilton MAVERICK, Respondent.

No. C–6225.

Supreme Court of Texas.

July 6, 1988.

Rehearing Denied Dec. 14, 1988.

Paul E. Knisely, Broadus A. Spivey, Pat Kelly, Spivey, Grigg, Kelly & Knisely, Austin, for petitioner.

Joe R. Greenhill, Jr., Milton L. Bankston, Bankston, Wright & Greenhill, Austin, George Spencer, Clemens, Spencer, Welmaker & Finck, San Antonio, for respondent.

KILGARLIN, Justice.

This case calls upon us to determine the time of accrual of a cause of action for legal malpractice. Yvonne Willis sued Chilton Maverick, the attorney who represented her in a divorce action, alleging legal malpractice in the handling of that action. Ms. Willis additionally claimed deceptive trade practice violations. The case was submitted to the jury on the negligence claim only. The jury answered the issues in favor of Yvonne Willis, finding Maverick negligent and such negligence to have proximately caused $26,568.44 in damages. The jury also awarded exemplary damages of $610,000.

The trial court, however, granted Maverick's motion for judgment non obstante veredicto and rendered a take nothing judgment against Yvonne Willis. The court of appeals affirmed that judgment, holding that Ms. Willis' cause of action was barred by the statute of limitations because the legal injury occurred more than two years before the malpractice action was filed. 723 S.W.2d 259. We disagree with the reasoning of the court of appeals and hold that the statute of limitations for legal malpractice actions does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action. Nevertheless, we affirm the judgment of the court of appeals because of Ms. Willis' failure to preserve error in that she failed to tender jury issues in substantially correct form.

In September 1979, Yvonne and Henry Willis decided to obtain a divorce. Attorney Chilton Maverick, with whom the Willises were friends, agreed to draft the divorce settlement agreement. Maverick prepared the first draft of the agreement, which provided, in part, that Yvonne Willis would have the right to reside in the marital home until the Willises' youngest child reached the age of eighteen. At the urging of Henry Willis, Maverick deleted the provision concerning Yvonne Willis' right to reside in the marital home. Yvonne Willis testified at trial that Maverick assured her that, despite the deletion, she would still have to agree before any sale of the home could take place.

On November 19, 1979, the agreement was incorporated into the divorce decree. By November 26, 1979, Maverick had performed his last act on behalf of the Willises incident to the divorce proceeding. On December 10, 1979, Maverick drafted a will for Yvonne Willis, his last act as her attorney. On September 18, 1980, Ms. Willis received notice of Henry Willis' intention to force partition of the marital home. Yvonne Willis testified at trial that she had believed that a partition suit was prohibited under the agreement.

On October 1, 1980, Yvonne Willis filed an equitable bill of review to set aside the divorce and property settlement. Henry Willis filed the partition suit on the next day. The two cases were consolidated. (Subsequently, in 1983, Yvonne Willis pre-

vailed, and the divorce decree was vacated and set aside.) On December 21, 1981, Yvonne Willis filed this malpractice action against Maverick.

At the outset, we express agreement with the court of appeals' determination that the two-year statute of limitations governs the present case. Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986). A cause of action for legal malpractice is in the nature of a tort and is thus governed by the two-year limitations statute. *First National Bank of Eagle Pass v. Levine*, 721 S.W.2d 287 (Tex.1986).

■ Our analysis of the two-year statute of limitations question begins with an examination of prior decisions of this court construing the statute's "accrual" language. The primary purpose of statutes of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds. *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex.1977). For a suit to be timely under the two-year statute, it must be brought within two years following the date the cause of action accrues. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986). The phrase "accrues" embodies a substantive law concept, and the courts are called upon to determine when a cause of action accrues and thus when the statute of limitations commences. *Developments in the Law—Statutes of Limitations*, 63 Harv.L. Rev. 1177, 1200 (1950). This court has previously twice relied upon the following language from *Fernandi v. Strully*, 35 N.J. 434, 173 A.2d 277, 285 (1961):

> [T]he question when a cause of action accrues is a judicial one, and to determine it in any particular case is to establish a general rule of law for a class of cases, which rule must be founded on reason and justice....

In the absence of legislative definition and specification, the ... courts have often been called upon to delineate the statute; they have consciously sought to apply it with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices.

*Robinson*, 550 S.W.2d at 20; *Gaddis v. Smith*, 417 S.W.2d 577, 580–81 (Tex.1967).

■ The discovery rule is the legal principle which, when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *Gaddis*, 417 S.W. 2d at 578. In deciding whether the discovery rule is applicable to a certain cause of action, this court's decisions in the area of medical malpractice are particularly instructive. The general rule regarding the accrual of a medical malpractice cause of action, for purposes of application of statutes of limitations, had been that the cause accrued when the facts came into existence that authorized a claimant to seek a judicial remedy, notwithstanding that the claimant might not discover the wrong until after the statute of limitations had run. *Carrell v. Denton*, 138 Tex. 145, 157 S.W.2d 878 (1942).[1]

In *Gaddis*, we adopted the discovery rule in the context of foreign objects medical malpractice cases. While acknowledging that the discovery rule might make it more difficult for the defendant to gather evidence, we noted the lack of susceptibility to fraudulent prosecution in this type of case as well as the "shocking results" of barring recovery to a deserving plaintiff unable to know of the wrongful act before expiration of the limitations period. *Gaddis*, 417 S.W.2d at 581.

Additionally, we extended application of the discovery rule to causes of action based on injury due to a negligent vasectomy operation. *Hays v. Hall*, 488 S.W.2d 412

---

1. This is a Commission of Appeals case, but the opinion of that court was adopted by the supreme court. Texas Rules of Form (6th ed. 1987), a publication of Texas Law Review, is the guide utilized by this court in citing cases. Regrettably, the publication contradicts itself at pp. 8–9 as to Rule 5.1 on how to cite opinion adopted Commission of Appeals cases. We have concluded that as this court adopted the opinion, it should be cited as an opinion of this court.

(Tex.1972). However, we declined to apply the discovery rule to cases involving medical misdiagnosis, observing that the policies underlying the statute of limitations outweighed our concern for claimants who unknowingly lose, due to limitations, causes of action based on medical misdiagnosis. *Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977).

■ This court has never reached the question of the applicability of the discovery rule in legal malpractice cases. *See Smith v. Knight,* 608 S.W.2d 165 (Tex. 1980). However, courts of appeals have reached divergent results in determining when a cause of action for legal malpractice accrues and the statute of limitations commences. *See, e.g., Smith v. Knight,* 598 S.W.2d 720, 721 (Tex.Civ.App.—Fort Worth 1980), *writ ref'd n.r.e. per curiam,* 608 S.W.2d 165 (Tex.1980) (discovery rule applies; citing the fiduciary relationship between attorney and client); *McClung v. Johnson,* 620 S.W.2d 644 (Tex.Civ.App.— Dallas 1981, writ ref'd n.r.e.) (discovery rule does not apply, but when duty arising out of the attorney-client relationship to disclose facts material to representation is breached, then the statute of limitations is tolled for so long as the attorney-client relationship exists); *Pack v. Taylor,* 584 S.W.2d 484 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.) (discovery rule does not apply).

This court has adopted the discovery rule in cases other than legal malpractice in which it is difficult for the injured party to learn of the negligent act or omission. *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex. 1976) (discovery rule applicable to false credit report); *Gaddis,* 417 S.W.2d at 580 (discovery rule applicable in medical malpractice cases); *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438 (1940) (discovery rule applicable in cases of fraud).

The policy reasons relied upon by Texas courts in adopting the discovery rule in

actions for fraud, credit libel, and medical malpractice are no less compelling in legal malpractice actions. An attorney is obligated to use the skill, prudence, and diligence commonly exercised by practitioners of his profession. The California Supreme Court has recognized that a "[c]orollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 188, 491 P.2d 421, 428, 98 Cal.Rptr. 837, 844 (1971). A Texas commentator states: "[i]t is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney." Ward, *Legal Malpractice in Texas,* 19 S.Tex.L.J. 587, 613 (1978).

■ The special relationship between an attorney and client further justifies imposition of the discovery rule. A fiduciary relationship exists between attorney and client. *McClung,* 620 S.W.2d at 647. As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation. *Id.* The client must feel free to rely on his attorney's advice. Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved. *Robinson v. Weaver,* 550 S.W.2d 18, 23 (Tex.1977) (Pope, J., dissenting). Further, breach of the duty to disclose is tantamount to concealment. *McClung,* 620 S.W.2d at 647. Thus, the California Supreme Court writes: "[p]ostponement of accrual of the cause of action until the client discovers, or should discover, the material facts in issue vindicates the fiduciary duty of full disclosure; it prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure." *Neel,* 6 Cal. 3d at 189, 491 P.2d at 429, 98 Cal.Rptr. at 845.[2]

---

**2.** The *McClung* court refused to apply the discovery rule, but held that the failure to disclose operates to toll the statute of limitations for so long as the duty exists, and that duty to disclose ceases when the relationship giving rise to the

duty ends. *McClung,* 620 S.W.2d at 647. Application of the discovery rule, however, is more consistent with this court's analysis in prior cases addressing the accrual of causes of action for the purposes of statute of limitations. The

Were we to follow the general rule, the client could protect himself fully only by ascertaining malpractice at the moment of its incidence. To do so, he would have to hire a second attorney to observe the work of the first. This costly and impractical solution would but serve to undermine the confidential relationship between attorney and client. *See id.* at 188, 491 P.2d at 428, 98 Cal.Rptr. at 844.[3]

Citing *Robinson v. Weaver*, 550 S.W.2d 18 (Tex.1977), Maverick would have us decline to apply the discovery rule to legal malpractice cases involving professional diagnosis, judgment, and discretion. This court's five to four decision in that case refused to extend the discovery rule to misdiagnosis in a medical malpractice case. The court's decision was predicated upon the perceived enhanced danger of fraudulent and stale claims that might arise under the discovery rule. We conclude that the logic relied upon by the majority in *Robinson* is untenable as it relates to this case. *See Robinson*, 550 S.W.2d at 22 (Pope, J., dissenting).

In sum, we believe that any burden placed upon an attorney by application of the discovery rule is less onerous than the injustice of denying relief to unknowing victims. *See* Note, *Accrual of Statutes of Limitations*, 68 Calif.L.Rev. 106, 119 (1980); Note, *Limitation of Action*, 46 Texas L.Rev. 119, 120–21 (1967). Accordingly, we hold that the statute of limitations for legal malpractice actions does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action.

We note that this holding brings Texas in line with an ever increasing majority of states that have recognized the inherent unfairness of commencing the statute of limitations in legal malpractice causes of action on the date of the occurrence of the negligent act or omission, or of the legal injury caused therefrom, notwithstanding the fiduciary relationship between attorney and client and the lack of knowledge, actual or constructive, on the part of the client. At least twenty-four states have judicially adopted the discovery rule to remedy this problem. *See Amfac Distribution Corp. v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 491 P.2d 421, 98 Cal.Rptr. 837 (1971); *Morris v. Geer*, 720 P.2d 994 (Colo.Ct.App.1986); *Pioneer National Title Ins. Co. v. Child, Inc.*, 401 A.2d 68 (Del.1979); *Edwards v. Ford*, 279 So.2d 851 (Fla.1973); *Kohler v. Woollen, Brown & Hawkins*, 15 Ill.App.3d 455, 304 N.E.2d 677 (1973); *Millwright v. Romer*, 322 N.W.2d 30 (Iowa 1982); *Louisville Trust Co. v. Johns–Manville Products*, 580 S.W.2d 497 (Ky.1979); *Graham v. Harlin, Parker & Rudloff*, 664 S.W.2d 945 (Ky.Ct. App.1983); *Knighten v. Knighten*, 447 So. 2d 534 (La.Ct.App.), *writ denied*, 448 So.2d 1303 (La.1984); *Mumford v. Staton, Whaley & Price*, 254 Md. 697, 255 A.2d 359 (1969); *Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131 (1974); *Jewett v. Patt*, 95 Nev. 246, 591 P.2d 1151 (1979); *McKee v. Riordan*, 116 N.H. 729, 366 A.2d 472 (1976); *Mant v. Gillespie*, 189 N.J.Super. 368, 460 A.2d 172 (1983); *Jaramillo v. Hood*, 93 N.M. 433, 601 P.2d 66 (1979); *Johnson v. Haugland*, 303 N.W.2d 533 (N.D.1981); *Skidmore & Hall v. Rottman*,

---

discovery rule, furthermore, better balances the policies underlying the statute of limitations and the legal malpractice cause of action than does the approach reached by the *McClung* court. The discovery rule expressly mandates the client to exercise reasonable diligence to discover facts of negligence or omission. Further, the discovery rule operates to protect the client even when the attorney is not aware of the negligence and after the attorney-client relationship ceases to exist. *See, e.g.,* Note, *McClung v. Johnson: Limitations in Legal Malpractice Actions*, 34 Baylor L.Rev. 269, 278–80 (1982).

**3.** After observing that the discovery rule had long been applied in California as to medical practitioners, the California Supreme Court wrote:

An immunity from the statute of limitations for practitioners at the bar not enjoyed by other professions is itself suspicious, but when conferred by former practitioners who now sit upon the bench, it is doubly suspicious.

*Neel,* 6 Cal.3d at 190, 491 P.2d at 429–30, 98 Cal.Rptr. at 845–46.

5 Ohio St.3d 210, 450 N.E.2d 684 (1983); *Funnell v. Jones,* 737 P.2d 105 (Okla.1985); *Smith v. Mensing,* 86 Or.App. 285, 739 P.2d 595 (1987); *Mills v. Killian,* 273 S.C. 66, 254 S.E.2d 556 (1979); *Wolfe v. Gilreath,* 699 S.W.2d 805 (Tenn.Ct.App.1985); *Peters v. Simmons,* 87 Wash.2d 400, 552 P.2d 1053 (1976); *Family Savings and Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 207 S.E.2d 157 (1974); *Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d 578 (1983). *See generally* Annot., *When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice,* 32 A.L.R. 4th 260 (1984).

Additional states have imposed the discovery rule by legislative enactment. *See, e.g., Burgett v. Flaherty,* 204 Mont. 169, 663 P.2d 332 (1983). Moreover, several other states have adopted variations of the discovery rule. *See Biberstine v. Woodworth,* 406 Mich. 275, 278 N.W.2d 41 (1979) (statute begins to run either from the termination of the attorney's services or from the discovery of the malpractice, whichever is later). *See also Moore v. McComsey,* 313 Pa.Super. 264, 459 A.2d 841 (1983).

██ In negligence cases, the claimant has the burden of pleading and proving facts suspending operation of a statute of limitations. *Weaver v. Witt,* 561 S.W.2d 792, 794 n. 2 (Tex.1977); *Wise v. Anderson,* 163 Tex. 608, 359 S.W.2d 876, 880–81 (1962); *National Resort Communities v. Short,* 712 S.W.2d 200, 201–02 (Tex.App.— Austin 1986, writ ref'd n.r.e.). The trial court in the instant case refused to submit Yvonne Willis' proffered discovery rule issue. Rule 279, as it existed prior to the January 1, 1988 amendments, provided that failure of the trial court to submit an issue was not error unless the issue had been requested, in writing, in substantially correct wording. Ms. Willis' requested issue read:

> When did Yvonne Willis discover that the Agreement Incident to Divorce, filed November 19, 1979, contained a provision allowing for the partition and sale of the [marital home]?

This requested issue was incorrectly worded; a correctly worded discovery rule issue

would have asked when the claimant discovered, or should have discovered, in the exercise of reasonable care and diligence, the facts establishing the elements of the cause of action. Ms. Willis' requested issue omitted the "should have discovered" element. Thus, to the extent that the discovery rule operates in legal malpractice cases to avoid the statute of limitations defense, Ms. Willis failed to preserve error. For this reason, and this reason only, we affirm the court of appeals' judgment denying recovery on the malpractice cause of action.

██ Yvonne Willis also alleges that fraudulent concealment operates to toll the statute of limitations until the negligent conduct or misrepresentation has been discovered. *Weaver,* 561 S.W.2d at 793; *Anderson v. Sneed,* 615 S.W.2d 898, 902–03 (Tex.Civ.App.—El Paso 1981, no writ). While Ms. Willis is correct in her assertion, the court of appeals properly observed that no allegations of fraud were made in the trial court.

██ Lastly, Ms. Willis argues that the trial court should have submitted issues pertaining to her claims against Maverick under the Deceptive Trade Practices Act (DTPA). The court of appeals did not rule on this point of error. As this point is within our jurisdiction, we will rule on it rather than remand it to the court of appeals. *McKelvy v. Barber,* 381 S.W.2d 59, 64 (Tex.1964). The DTPA's limitations provision incorporates the discovery rule. Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987) (formerly § 17.56A). The burden was on Ms. Willis to plead and prove discovery so as to prevent limitations as a bar. We thus overrule this point, observing that the only discovery rule issue requested by Ms. Willis was not requested in substantially correct wording. Accordingly, it becomes unnecessary to address Maverick's contention that the DTPA is not applicable to this cause of action. In concluding thus, we recognize that we have previously held a lawyer's unconscionable conduct to be actionable under the DTPA. *DeBakey v. Staggs,* 612 S.W.2d 924 (Tex.1981). On the other hand, we have declined to extend

implied warranties (which are likewise actionable under the DTPA) to include professional conduct. *Dennis v. Allison*, 698 S.W.2d 94 (Tex.1985). Our determination of whether a lawyer's professional conduct is actionable under the DTPA must await another day. *See, e.g., Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.1987).

The judgment of the court of appeals is affirmed.

GONZALEZ, J., concurred and dissented and filed an opinion joined by CULVER, J.

MAUZY, J., concurred and dissented and filed an opinion joined by ROBERTSON, J.

MAUZY, Justice, concurring and dissenting.

I emphatically agree with the court's decision to apply the discovery rule in the alleged legal malpractice causes of action. However, I dissent from the court's decision to nevertheless affirm the take-nothing judgment against Willis. I would remand for a new trial.

Willis' cause of action arose because of the malpractice of the attorney handling her divorce. The jury not only found that Chilton Maverick was negligent but that he acted knowingly and with heedless and reckless disregard to the rights of Yvonne Willis. Based upon its conclusion that Willis had been wronged, the jury awarded damages in her favor. Notwithstanding that jury verdict, Willis has been unable to obtain a judgment because of the court of appeals' conclusion that her action was barred by the statute of limitations.

Recognizing "the injustice of denying relief to unknowing victims," this court now affirmatively and absolutely disapproves of the reasoning of the court of appeals. Nevertheless, the court goes on to affirm the take-nothing judgment against Willis for the reason that her trial attorney failed to request a discovery rule issue in substantially correct wording.

Thus, through fighting this legal battle for eight years, Willis has furthered the cause of justice for countless future victims of legal malpractice, but for Willis herself there is no justice. When she went to court to try to obtain a remedy for the wrong of her first attorney, Willis' attorney at trial failed to request a jury issue in substantially correct wording. On this basis, the court holds that Willis still loses. The essence of what this court says to Willis is this: "Now turn the other cheek and swallow hard." I doubt that Willis will derive much comfort from the purely academic knowledge that her persistence in trying to seek redress through the courts has resulted in a significant step forward in the jurisprudence of this state.

Texas Rule of Appellate Procedure 180 expressly authorizes this court to reverse a court of appeals' judgment and remand a cause to the trial court "if it shall appear that the justice of the cause demands another trial." I am aware of case law construing this Rule in a narrow fashion; however, I would choose to simply follow the straight-forward language of the Rule. Because Willis has now been twice victimized by attorneys and because the court's opinion in this case represents a change in the law, I would reverse the judgment of the court of appeals and, in the interest of justice, remand it to the trial court for a new trial. Tex.R.App.P. 180; *cf. Brown v. Republicbank First National*, (Tex.1988) (Phillips, C.J., dissenting).

I would also hold that, on retrial, Willis should be allowed to submit jury issues as to her DTPA claims. This court has clearly held that a lawyer's unconscionable conduct is actionable under the DTPA. *DeBakey v. Staggs*, 612 S.W.2d 924 (Tex.1981). Moreover, this court has not expressly rejected the notion that an implied warranty of good and workmanlike performance may apply to the provision of legal services. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex.1987).

The court's decision to affirm the take-nothing judgment against Willis produces a result that is "so absurd and so unjust" that it "ought not to be possible." *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex.1973). I would reverse the judgment of the court of

appeals and, in the interest of justice, remand the cause to the trial court for a new trial on all causes of action.

ROBERTSON, J., joins in this concurring and dissenting opinion.

GONZALEZ, Justice, concurring and dissenting.

For the reasons stated in Chief Justice Cadena's dissenting opinion, 723 S.W.2d at 262, I would reverse the judgment of the court of appeals and remand this cause for a new trial.

CULVER, J., joins in this concurring and dissenting opinion.