

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00312-CV

GATOR FRAC HEATING AND RENTALS, LLC, APPELLANT

V.

DUSTIN BROOKS AND THE BROOKS FIRM, LLC, APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2017-527,045, Honorable Mackey K. Hancock, Presiding

July 30, 2019

OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellant Gator Frac Heating and Rentals, LLC sued its former attorney, Dustin Brooks, alleging Brooks committed legal malpractice in a transactional matter. It further alleged the discovery rule extended the accrual date of its cause of action so that suit was timely filed. Brooks raised the statute of limitations as an affirmative defense and moved for summary judgment on that and another defensive ground. Without specifying the ground, the trial court rendered summary judgment that Gator Frac take nothing. We will overrule Gator Frac's two issues on appeal and affirm the judgment of the trial court.

## Background

In 2013 Gator Frac retained Brooks to draft documents for Gator Frac's lease of two frac-water heating units to Big Eagle Limited Partnership, a Canadian company. Brooks drafted the documents and delivered them to Gator Frac on May 28, 2013; Gator Frac and Big Eagle completed and signed the leases two days later. Big Eagle took possession of the two units in December 2013 and transported them to Canada.

Meanwhile, in 2008 Wells Fargo Foothill Canada, ULC, provided Big Eagle a credit facility secured by a continuing security interest in all of Big Eagle's personal property "whether now owned or hereafter acquired or arising and wherever located" including Big Eagle's "right, title and interest in" goods, equipment, and fixtures. Also in June 2008, Wells Fargo registered notice of its security agreement with the Alberta, Canada, Personal Property Registry.

Big Eagle did not make the lease payments to Gator Frac in April 2015. On June 8, 2015, Big Eagle was placed in Canadian receivership. On August 10, 2015, Gator Frac registered notice of its interest in the two units with the Alberta Registry.

On August 31, 2015, a Canadian court, acting on the receiver's application for advice and direction, ruled that Wells Fargo's security interest in the two heating units was superior to Gator Frac's interest. The summary judgment record contains a copy of the opinion. *Wells Fargo Foothill Canada, ULC v. Big Eagle Hydro-Vac, Inc.,* 2015 ABQB 546 (Can.) In reaching its decision the court stated under Canadian law, in a case of competing security interests, "the true owner must forfeit title, when faced with a competing interest, if [it] failed to register [its] interest as required." *Id.* at 36. Gator Frac,

2

the court found, did not register notice of its security interest and therefore did not perfect its security interest. *Id.* at ¶ 54. The court observed Gator Frac could have preserved a priority position in the two units had it taken a purchase-money security interest or, alternatively, it could have made a priority and postponement agreement with Wells Fargo. But it did neither. *Id.* at ¶ 62. The court ordered that the receiver was entitled to dispose of the units. *Id.* at ¶ 63. Jerry McKee, who identified himself as a "partner, owner" of Gator Frac, testified by deposition that he was told the heating units were "auctioned off."

Two years later, on August 31, 2017, Gator Frac filed suit against Brooks. Brooks answered and, relying on the two-year statute of limitations of Civil Practice and Remedies Code section 16.003, alleged Gator Frac's suit was barred because it was filed more than two years after the cause of action accrued. Brooks moved for traditional summary judgment on the limitations defense and another ground and the trial court granted summary judgment without specifying the ground.

The summary judgment record contains McKee's deposition testimony given in the suit against Brooks. The testimony contains exchanges establishing that McKee was aware by July 29, 2015, that Gator Frac had retained counsel in Canada to deal with the receivership, and by that date he was aware there was "an issue about Wells Fargo claiming that its lien on this equipment was better than Gator Frac's[.]" He acknowledged a July 30, 2015, email from another Gator Frac official giving an update on information from Gator Frac's Canadian counsel. McKee acknowledged he knew that "the problem being raised by Wells Fargo and the receiver was that Gator Frac had not registered or made some kind of filing of its position in Canada."

3

The summary judgment record contains also the affidavit of the other Gator Frac official, prepared for filing in the Canadian court proceeding.[1]  The affidavit details that official's communications with an officer of Big Eagle, beginning on June 19, 2015, regarding efforts to obtain the receiver's authorization for release of the heating units to Gator Frac.  It also describes, and attaches a copy of, the July 22, 2015 letter from Gator Frac's Canadian counsel to counsel for the receiver, requesting return of the units from the receiver.

Analysis

Through two issues which we will discuss together, Gator Frac contends summary judgment was improper because the discovery rule postponed accrual of its legal malpractice claim against Brooks until August 31, 2015, when the Canadian court issued its opinion.  Only then, Gator Frac continues, did it suffer legal injury and learn the elements of its cause of action.

In our review of the summary judgment we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Kachina Pipeline Co. v. Lillis,* 471 S.W.3d 445, 449 (Tex. 2015).  A movant seeking summary judgment on the statute of limitations affirmative defense must: (1) "conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in

---

[1] The affidavit is dated August 13, 2015 and bears an August 19 file-mark of the Canadian court.

4

the exercise of reasonable diligence should have discovered the nature of its injury." *KPMG Peat Marwick v. Harrison Cty. Housing Fin. Corp.,* 988 S.W.2d 746, 748 (Tex. 1999). If the movant establishes that the statute of limitations bars the action, the nonmovant must then present evidence raising a fact issue in avoidance of the statute of limitations. *Id.*

The statute of limitations for legal malpractice is two years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West 2017); *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 120 (Tex. 2001); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1988) ("A cause of action for legal malpractice is in the nature of a tort and is thus governed by the two-year limitations statute"). Accrual of a cause of action ordinarily occurs when "a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Sw. Energy Prod. Co. v. Berry-Helfand,* 491 S.W.3d 699, 721 (Tex. 2016) (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994).[2] Determination of the date a cause of action accrues is normally a question of law. *Exxon Corp. v. Emerald Oil and Gas Co.,* 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g) (citing *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex. 2003)).

"[T]he discovery rule is a judicially conceived exception to statutes of limitation to be used by courts to determine when a cause of action accrues." *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 353 (Tex. 1990). The discovery rule applies to legal

---

[2] The legal injury rule often has been traced to *Houston Water-Works Co. v. Kennedy,* 70 Tex. 233, 8 S.W. 36 (1888). *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex. 1997).

malpractice actions. *Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex. 1988). "[I]n such cases, limitations does not begin to run until the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." *Apex Towing,* 41 S.W.3d at 121 (citing *Willis,* 760 S.W.2d at 646). "The focus of the discovery rule . . . is not on discovery of a particular cause of action, it is on discovery of facts, including injury, giving rise to a cause of action." *Williard Law Firm, L.P. v. Sewell,* 464 S.W.3d 747, 753-54 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Gator Frac alleged in its live petition Brooks was negligent in two respects: he did not "conduct proper research, do necessary diligence, obtain necessary information, and engage qualified consultants to ensure that [Gator Frac's] security interest in the equipment was perfected in Canada and took priority over any other creditors" and he "failed to include appropriate and necessary provisions in the Leases to ensure the return of the equipment to [Gator Frac] either after the Leases were completed or in the event of a default under the Lease by the Lessee, and to avoid any intervention by another creditor of the Lessee to seize the equipment." The damages alleged included "loss of equipment, loss of revenues from and loss of the use of the equipment, attorney's fees paid in trying to recover the equipment, and associated expenses."

Absent deferment by the discovery rule, Gator Frac's claim Brooks negligently failed to ensure its interest in the heating units was perfected in Canada and took priority over any other creditor accrued when Gator Frac incurred a legal injury, that is, in December 2013 when the two units were delivered to Big Eagle thereby subordinating

6

Gator Frac's interest to that of Wells Fargo.[3] *See Berry-Helfand,* 491 S.W.3d at 721 (cause of action ordinarily accrues when wrongful act causes a legal injury). And, any legal injury Gator Frac incurred by virtue of Brooks' alleged legal malpractice in drafting the lease agreements occurred in May 2013 when Brooks delivered the draft leases and Gator Frac executed them. *See Murphy*, 964 S.W.2d 270 ("[a] person suffers legal injury from faulty professional advice when the advice is taken"); *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 785-86 (Tex. 2006) (accrual of claim based on negligent drafting). Thus, for Brooks' alleged legal malpractice in drafting the lease agreements and failing to properly preserve a security interest, Gator Frac could have brought suit in 2013.

Because the discovery rule applies to claims of legal malpractice, *Willis,* 760 S.W.2d at 646, however, Brooks' summary judgment burden required that he conclusively establish the nature of the injury was discovered or should have been discovered in the exercise of reasonable care and diligence before August 31, 2015. *Willis,* 760 S.W.2d at 644, 647. Under the discovery rule, "[o]nce a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Gonzales v. Sw. Olshan Found. Repair Co.,* 400 S.W.3d 52, 58 (Tex. 2013) (addressing DTPA claim); *see In re Jorden,* 249 S.W.3d 416, 422 (Tex. 2008) (orig. proceeding) ("Texas law has never required that a plaintiff know all the essential facts

---

[3] The Canadian court held Big Eagle had rights in the collateral under the Alberta statute "the moment it took possession" of the units and "the Wells Fargo's Security" attached "that moment." *Wells Fargo Foothill Canada, ULC v. Big Eagle Hydro-Vac, Inc.,* 2015 ABQB 546, ¶¶ 59, 60 (Can.).

before a cause of action exists.  To the contrary, a cause of action accrues . . . when a claimant learns of an injury, even if the rest of the essential facts are unknown").

As noted, on July 22, 2015, the Canadian counsel Gator Frac had retained to deal with the receivership and its lien position wrote counsel for the receiver, requesting that the receiver return both heating units to Gator Frac.  Gator Frac admits by July 30, 2015, it was aware Wells Fargo claimed a superior lien position in the two units and the "problem" related to Gator Frac's failure to register its interest.  And by August 10, 2015, Gator Frac not only knew its interest in the units had not been registered with the Alberta Registry, it took steps on that date to remedy the failure by registering the required notice.  By its suit, Gator Frac alleged Brooks failed to ensure its security interest was perfected in Canada and took priority over other creditors.  No later than August 10, Gator Frac knew of the nature of its legal injury and the facts giving rise to the cause of action it asserted against Brooks.  For accrual of its cause of action under the discovery rule, it was not necessary that it then know the full extent of the injury, or the chances of avoiding it.  *Sw. Olshan Found. Repair,* 400 S.W.3d at 58.

We find that reasonable minds could not disagree that Gator Frac knew or reasonably should have known of its alleged injury more than two years before it filed suit.  *See PPG Indus., Inc. v. JMB/Houston Ctrs.,* 146 S.W.3d 79, 93-94 (Tex. 2004) (citing *Childs v. Haussecker,* 974 S.W.2d 31, 44 (Tex. 1998) ("the commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record")); *KPMG,* 988 S.W.2d at 748, 750 (finding defendant proved its limitations defense because as a matter of law

plaintiff knew or should have known of its accounting malpractice claim against defendant more than two years before it filed suit).

Gator Frac insists that it suffered no loss until the Canadian court issued its ruling in Wells Fargo's favor. The Texas Supreme Court rejected just such an argument in *Murphy*, 964 S.W.2d at 273.[4] As in *Murphy*, the argument conflates knowledge of a legal injury with knowledge of all its consequences. A party's incurrence of a legal injury need not await its incurrence of all resulting damages. *Sw. Olshan Found. Repair Co.,* 400 S.W.3d at 58. Nor does the discovery rule require a plaintiff to know an injury's detrimental consequences cannot be avoided before limitations commences. *Murphy*, 964 S.W.2d at 273; *see PPG Indus.,* 146 S.W.3d at 94 (citing *Murphy*). Moreover, the summary judgment record conclusively demonstrates Gator Frac suffered a recoverable loss well before August 31, 2015. *Belt* addressed the accrual of a legal malpractice claim for negligent drafting of estate-planning documents resulting in increased estate tax liability. *Belt*, 192 S.W.3d at 785-86. The court observed, "[w]hile the primary damages at issue here—increased tax liability—did not occur until after the decedent's death, the lawyer's alleged negligence occurred while the decedent was alive." *Id.* at 786 (citing *Apex Towing*, 41 S.W.3d at 120). The court continued, pointing out that the decedent could have brought suit against the estate-planning attorneys during his lifetime if he had

---

[4] The court there addressed a dissenting opinion that characterized the court's opinion as holding the accounting malpractice cause of action accrued on knowledge of the "mere risk of injury." The court responded, "As in all discovery rule cases, a cause of action accrues when the plaintiff knows or reasonably should know that he has been legally injured by the alleged wrong, however slightly. The fact that the plaintiff's actual damages may not be fully known until much later does not affect the determination of the accrual date for alleged accounting malpractice any more than it does for legal malpractice." 964 S.W.2d at 273.

discovered the injury, recovering such damages as "the costs incurred in restructuring his estate to minimize tax liability." *Id.*

Although the court in *Belt* was concerned with survival of a cause of action rather than commencement of limitations, *id.* at 786 n.5, its holding the client's cause of action properly could have included costs incurred to cure problems caused by negligent drafting has application here. As Brooks' brief points out, Gator Frac's trial-court pleadings alleged damages that included its "attorney's fees paid in trying to recover" its equipment. Gator Frac paid its Canadian counsel ten thousand dollars in July 2015. Its pleadings also sought damages for loss of use of the units. As noted, its Canadian counsel directly sought return of the units from the receiver that same month. If, as Gator Frac's suit against Brooks alleges, he was negligent by failing to take the necessary steps to ensure Gator Frac's interest in the units was perfected in Canada and by failing to draft the leases so as to ensure return of the units to Gator Frac and avoid "any intervention by another creditor of the Lessee to seize the equipment," at the least its losses in the form of incurred attorney's fees and loss of use of the units through the receiver's possession of them were known to Gator Frac well before the Alberta court issued its opinion. *See Murphy*, 964 S.W.2d at 273 (accrual occurs when plaintiff knows he has been "legally injured by the alleged wrong, however slightly"). Knowledge of such facts "triggers the two-year period of time within which the plaintiff must investigate and determine whether to file suit." *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 754 (Tex. App.—Amarillo 1995, writ denied).

As further support for its argument its causes of action did not accrue until the August 31, 2015 order of the Canadian court, Gator Frac asserts if it had sued Brooks

any earlier it would have been forced to "take the kind of inconsistent positions described in [*Apex Towing*, 41 S.W.3d at 120]: arguing in the Canadian Court that [it] had priority interest, while alleging the opposite in a legal malpractice case." Gator Frac's argument refers to the tolling rule initially set out in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). Consistent with prior opinions of this court and other courts of appeals, we find the *Hughes* rule would have no application to Brooks' alleged negligence in transactional work completed in 2013. *See, e.g., Vacek Group, Inc. v. Clark*, 95 S.W.3d 439, 444-47 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *JC Project Mgmt. Servs. v. Kitchens*, No. 12-17-00130-CV, 2018 Tex. App. LEXIS 4889, at *6-7 (Tex. App.—Tyler June 29, 2018, pet. denied) (mem. op.); *Brennan v. Manning*, No. 07-06-00041-CV, 2007 Tex. App. LEXIS 2838, at *5 (Tex. App.—Amarillo Apr. 12, 2007, pet. denied) (mem. op.). *Hughes* provides no reason to alter the accrual date of Gator Frac's claims against Brooks under the discovery rule.

## Conclusion

For the reasons described, we overrule Gator Frac's appellate issues and affirm the judgment of the trial court.

James T. Campbell
Justice

11